UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN BUSHANSKY, <br><br> Plaintiff, <br><br> v. <br><br> FSB BANCORP, INC., KEVIN D. MARONEY, DAWN DEPERRIOR, DANA C. GAVENDA, STEPHEN J. MEYER, LOWELL C. PATRIC, ALICIA H. PENDER, JAMES E. SMITH, and THOMAS J. WELDGEN, <br><br> Defendants. | Case No. 5:20-CV-294[DNH/ATB] <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against FSB Bancorp, Inc. ("FSB" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which FSB will be acquired by Evans Bancorp, Inc. ("Evans"), through its wholly owned subsidiary MMS Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On December 19, 2019, FSB and Evans issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated December 19, 2019 (the "Merger

Agreement") to sell FSB to Evans. Under the terms of the Merger Agreement, each FSB stockholder will have the right to receive either (i) 0.4394 shares of Evans common stock, or (ii) $17.80 in cash for each share of FSB common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $34.7 million.

3. On March 12, 2020, FSB filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that FSB stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the sale process leading to the Proposed Transaction; (ii) FSB's, Evans' and the pro forma projections, relied upon by FSB's financial advisor, Sandler O'Neill & Partners, L.P. ("Sandler"), in its financial analyses; and (iii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Sandler. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, FSB's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District and defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of FSB.

9. Defendant FSB is a Maryland corporation with its principal executive offices located at 45 South Main Street, Fairport, New York 14450. FSB's banking subsidiary is Fairport Savings Bank (the "Bank"). The Company's principal business consists of originating one- to four-family residential real estate mortgages, home equity loans and lines of credit, and to a lesser extent, originations of commercial real estate, multi-family, construction, commercial and industrial, and other consumer loans. The Company attracts retail deposits from the general public in the areas surrounding its main office and branches, offering a wide variety of deposit products. FSB's common stock trades on the NASDAQ Stock Market LLC under the ticker symbol "FSBC."

10. Defendant Kevin D. Maroney ("Maroney") has been Chief Executive Officer ("CEO") of the Company since January 2018, and President and a director of the Company since 2017.

11. Defendant Dawn DePerrior ("DePerrior") has been a director of the Company since 2015.

12. Defendant Dana C. Gavenda ("Gavenda") has been Chairman of the Board and a director of the Company since 2002. Defendant Gavenda previously served as CEO of the Company for 16 years until his retirement in December 2017.

13. Defendant Stephen J. Meyer ("Meyer") has been a director of the Company since 2015.

14. Defendant Lowell C. Patric ("Patric") is lead independent director and has been a director of the Company since 2009.

15. Defendant Alicia H. Pender ("Pender") has been a director of the Company since 2008.

16. Defendant James E. Smith ("Smith") has been a director of the Company since 1991.

17. Defendant Thomas J. Weldgen ("Weldgen") has been a director of the Company since 2015.

18. Defendants identified in paragraphs 10-17 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

19. Evans is a New York corporation, registered as a financial holding company under the Bank Holding Company Act of 1956, with its principal executive offices located at One Grimsby Drive, Hamburg, NY 14075. Incorporated in 1988, Evans' primary business is the operation of its subsidiaries and it does not engage in any other substantial business activities. It has two direct wholly-owned subsidiaries: (1) Evans Bank, N.A. ("Evans Bank"), which provides a full range of banking services to consumer and commercial customers in Western New York; and (2) Evans National Financial Services, LLC ("ENFS"), which owns 100% of the membership interests in The Evans Agency, LLC, which sells various premium-based insurance policies on a

commission basis.  At December 31, 2018, Evans Bank represented 99% and ENFS represented 1% of the consolidated assets of the Company.  Evans' common stock trades on the New York Stock Exchange American market under the ticker symbol "EVBN."

20.     Merger Sub is a Maryland corporation and wholly owned subsidiary of Evans.

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

21.     The Company's banking subsidiary, the Bank, is a New York-chartered savings bank established in 1888 and headquartered in Fairport, New York.  The Bank's principal business consists of originating one- to four-family residential real estate mortgage loans and home equity lines of credit, and to a lesser but increasing extent, commercial real estate, multi-family and construction loans.  FSB also offers commercial and industrial loans and other consumer loans.  FSB's principal source of funds are the retail deposit products it offers to the general public in the areas surrounding its branch offices.  The Company also utilizes borrowings as a source of funds.  Revenues are derived primarily from interest on loans and, to a lesser extent, interest on investment and municipal securities and mortgage-backed securities.  The Company also generates revenues from other income, including realized gains on sales of loans associated with loan production generated from its loan origination offices, deposit fees and service charges, realized gains on sales of securities, earnings on bank owned life insurance and loan fees.  Additionally, FSB derives income through Fairport Wealth Management, a subsidiary that offers non-deposit investments such as annuities, insurance products and mutual funds as well as asset management.

**The Proposed Transaction**

22.     On December 19, 2019, FSB and Evans issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

HAMBURG, N.Y. & FAIRPORT, N.Y.--(BUSINESS WIRE)--Evans Bancorp, Inc. ("Evans") (NYSE American: EVBN) and FSB Bancorp, Inc. ("FSB") (Nasdaq: FSBC), jointly announced the execution of a definitive merger agreement whereby Evans will acquire FSB for $17.80 per share for total consideration of approximately $34.7 million. The transaction is proposed to be comprised of 50% stock and 50% cash. Unanimously approved by the Boards of Directors of each company, the transaction is expected to close in the second quarter of 2020, subject to the satisfaction of customary closing conditions, including regulatory approval and FSB stockholder approval. An investor presentation summarizing the transaction is available at www.evansbancorp.com.

"FSB has a long-established presence and respected legacy in an attractive market. By combining our organizations, we are advancing our growth objectives and strategy to build the premier community financial institution in the markets we serve by expanding our geographic footprint and diversifying our client base. Expanding to Rochester had been prioritized as part of our strategic planning and is accelerated by this opportunity," said David J. Nasca, President and CEO of Evans. "We are very excited to welcome the team members of FSB and to continue to provide customers with the relationship service they know and desire."

Kevin D. Maroney, FSB's President and CEO, commented, "This mutually beneficial partnership will combine two community banks with very similar cultures and core values. The combined organization will be able to offer top of line products and exceptional service to our customers in Rochester and surrounding markets. In addition to providing our customers with enhanced and expanded products and services, our employees will also benefit from broader opportunities in a larger organization with strong growth potential."

Under the terms of the merger agreement, FSB stockholders will have the right to receive at their election either 0.4394 shares of Evans common stock or $17.80 in cash for each share of FSB common stock, subject to possible adjustment and 50/50 proration. This transaction will qualify as a tax-free reorganization for those FSB stockholders who receive Evans common stock in the transaction. The merger consideration represents an 8% premium to FSB's tangible book value as of September 30, 2019, and a 5.9% premium to FSB's closing share price on December 18, 2019. Evans' management expects this transaction will be 4.7% accretive to 2021 earnings with tangible book value earn back of approximately 3.5 years.

Based on information as of September 30, 2019, the combined company will have 20 financial centers with approximately $1.8 billion in total assets, $1.5 billion in total deposits and $1.5 billion in total loans. Completion of the transaction is subject to customary closing conditions, including the receipt of regulatory approvals and the approval of FSB stockholders. Under the terms of the merger agreement, at closing of the transaction, FSB and its wholly owned bank subsidiary, Fairport

Savings Bank, will be merged with and into Evans Bancorp and its subsidiary bank, Evans Bank.

**Insiders' Interests in the Proposed Transaction**

23. FSB insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of FSB.

24. Notably, Company insiders stand to secure positions for themselves with the combined company. Specifically, defendant Maroney will continue to serve on the combined company's board of directors.

25. FSB insiders also stand to reap substantial financial benefits for securing the deal with Evans. Pursuant to the Merger Agreement, all outstanding options will convert into the right to receive cash payments and restricted stock awards ("RSA") will vest and convert into the right to receive the Merger Consideration. The following tables summarize the value of the Company options and RSAs that Company insiders stand to receive:

| Name | FSB Stock Options (#) | Weighted-Average Exercise Price ($) | Cash-Out Value ($) |
|---|---|---|---|
| Kevin Maroney | 48,540 | $ 16.72 | $ 52,423 |
| Angela Krezmer | 5,000 | 17.52 | 1,400 |
| Michael Giancursio | 6,000 | 16.69 | 6,660 |
| Dana Gavenda | 48,540 | 16.72 | 52,423 |
| Dawn DePerrior | 7,000 | 16.72 | 7,560 |
| Stephen Meyer | 7,000 | 16.72 | 7,560 |
| Lowell Patric | 7,000 | 16.72 | 7,560 |
| Alicia Pender | 7,000 | 16.72 | 7,560 |
| James Smith | 7,000 | 16.72 | 7,560 |
| Charis Warshof | 7,000 | 16.72 | 7,560 |
| Thomas Weldgen | 7,000 | 16.72 | 7,560 |

| Name | Unvested FSB Restricted Stock Awards (#) | Aggregate Restricted Stock Award Value ($) |
|---|---|---|
| Kevin Maroney | 11,646 | $ 200,428 |
| Angela Krezmer | 1,200 | 20,652 |
| Michael Giancursio | 1,500 | 25,815 |
| Dana Gavenda | 11,646 | 200,428 |
| Dawn DePerrior | 1,500 | 25,815 |
| Stephen Meyer | 1,500 | 25,815 |
| Lowell Patric | 1,500 | 25,815 |
| Alicia Pender | 1,500 | 25,815 |
| James Smith | 1,500 | 25,815 |
| Charis Warshof | 1,500 | 25,815 |
| Thomas Weldgen | 1,500 | 25,815 |

26. Moreover, FSB's named executive officers stand to receive substantial merger-related executive compensation upon completion of the Proposed Transaction, as set forth in the following table:

| Name | Cash(1) | Equity(2) | Pension/ NQDC(3) | Perquisites/ Benefits(4) | Other(5) | Total |
|---|---|---|---|---|---|---|
| Kevin Maroney | $ 729,840 | $ 231,858 | $ 600,000 | $ 26,200 | $ 11,488 | $ 1,599,386 |
| Angela Krezmer | 214,545 | 21,490 | — | 11,547 | 5,173 | 252,755 |
| Michael Giancursio | 362,843 | 29,808 | — | 16,608 | 7,593 | 416,852 |

**The Proxy Statement Contains Material Misstatements or Omissions**

27. Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to FSB's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

28. Specifically, as set forth below, the Proxy Statement fails to provide Company shareholders with material information or provides them with materially misleading information concerning: (i) the sale process leading to the Proposed Transaction; (ii) FSB's, Evans' and the pro forma projections, relied upon by FSB's financial advisor, Sandler, in its financial analyses; and (iii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Sandler.

*Material Omissions Concerning the Background Process*

29. The Proxy Statement fails to disclose material information regarding the background process leading up to the Proposed Transaction.

30. For example, the Proxy Statement sets forth that in connection with the potential sale of FSB, the Company entered into non-disclosure agreements with four prospective acquirers. Proxy Statement at 61. Critically, the Proxy Statement fails to expressly indicate whether the confidentiality agreements FSB entered into with these potential acquirers are still in effect and/or contain "don't ask, don't waive" ("DADW") standstill provisions that are presently precluding these potential buyers from making a topping bid for the Company.

31. The failure to disclose the existence of DADW provisions creates the false impression that any of the potential buyers who entered into nondisclosure agreements could make a superior proposal for the Company. If those nondisclosure agreements contain DADW provisions, then those potential buyers can only make a superior proposal by (i) breaching the nondisclosure agreement—since in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly; or by (ii) being released from the agreement, which if action has been done, is omitted from the Proxy Statement.

32. Any reasonable FSB stockholder would deem the fact that the most likely topping bidders for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

33. The omission of this information renders the statements in the "Background of the Mergers" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning FSB's, Evans', and the Pro Forma Financial Projections*

34. The Proxy Statement omits material information regarding FSB's, Evans' and the pro forma financial projections relied upon by Sandler for its analyses. For example, the Proxy Statement expressly indicates that in connection with its fairness opinion, Sandler reviewed and considered:

- the pro forma financial impact of the merger on Evans based on certain assumptions relating to purchase accounting adjustments, transaction expenses, cost-savings and the Evans Stock Buyback Transactions, as well as estimated net income for FSB for the year ending December 31, 2019 with estimated annual net income growth rates for the years ending December 31, 2020 through December 31, 2023, as provided by the senior management of Evans and its representatives[.]

*Id.* at 69. The Proxy Statement fails, however, to disclose Evans' management's assumptions relating to purchase accounting adjustments, transaction expenses, cost-savings and the Evans Stock Buyback Transactions.

35. Additionally, in connection with its *Net Present Value Analysis*, Sandler utilized the Company's and Evans' earnings and tangible book value figures. *Id*. at 76-77. The Proxy Statement, however, fails to disclose the Company's or Evans' earnings or tangible book value figures over the projection period.

36. The omission of this information renders the statements in the "Certain Unaudited Financial Projections Provided by FSB" and "Opinion of FSB's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Sandler's Financial Analyses***

37. The Proxy Statement describes Sandler's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Sandler's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, FSB's public stockholders are unable to fully

understand these analyses and, thus, are unable to determine what weight, if any, to place on Sandler's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

38. With respect to Sandler's *Net Present Value Analysis* of FSB, the Proxy Statement fails to disclose: (i) the Company's earnings metrics Sandler discounted back to present value which formed the basis of its analysis and quantification thereof; (ii) the Company's tangible book value metrics Sandler applied terminal multiples to in order to derive the terminal values for FSB and quantification thereof; (iii) quantification of the inputs and assumptions underlying the discount rate range of 8.0% to 13.0%; and (iv) the implied perpetuity growth rates resulting from the analysis.

39. With respect to Sandler's *Net Present Value Analysis* of Evans, the Proxy Statement fails to disclose: (i) Evans' earnings metrics Sandler discounted back to present value which formed the basis of its analysis and quantification thereof; (ii) Evans' tangible book value metrics Sandler applied terminal multiples to in order to derive the terminal values for Evans and quantification thereof; (iii) quantification of the inputs and assumptions underlying the discount rate range of 8.0% to 13.0%; and (iv) the implied perpetuity growth rates resulting from the analysis.

40. With respect to Sandler's *Pro Forma Merger Analysis*, the Proxy Statement fails to disclose: (i) Evans' management's assumptions relating to purchase accounting adjustments, transaction expenses and cost savings; (ii) the specific accretion figures to Evans' estimated earnings per share (excluding one-time transaction costs and expenses) for the years ending December 31, 2020 through December 31, 2023; and (iii) the specific dilution figures to Evans' estimated tangible book value per share at closing, December 31, 2020, December 31, 2021, and December 31, 2022.

41. The omission of this information renders the statements in the "Opinion of FSB's Financial Advisor" and "Certain Unaudited Financial Projections Provided by FSB" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

42. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information, Plaintiff and the other FSB stockholders will be unable to make a sufficiently informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

43. Plaintiff repeats all previous allegations as if set forth in full.

44. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

45. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresents and/or omits material facts, including material information about the sale process leading to the Proposed Transaction, FSB's, Evans' and the pro forma projections relied upon by FSB's financial advisor, Sandler, in its financial analyses, and the data and inputs underlying the financial valuation

analyses that support the fairness opinion provided by Sandler.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

46. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

47. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

48. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

49. Plaintiff repeats all previous allegations as if set forth in full.

50. The Individual Defendants acted as controlling persons of FSB within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of FSB, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the

statements or cause the statements to be corrected.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

53. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, FSB's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of FSB, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in

      concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to FSB stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 13, 2020

**WEISSLAW LLP**

By  */s/ Mark D. Smilow*
    Mark D. Smilow
    Richard A. Acocelli (to be admitted *pro hac vice*)
    1500 Broadway, 16th Floor
    New York, New York 10036
    Telephone: (212) 682-3025
    Facsimile: (212) 682-3010
    Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*